**ARDISAM, INC., d/b/a Yukon Tracks and Spring Form, Inc., Plaintiffs,**

v.

**AMERISTEP, INC., Hunter's View, Ltd. and Eastman Outdoors, Defendants.**

No. 03–C–553–C.

United States District Court, W.D. Wisconsin.

Feb. 6, 2004.

Jon G. Furlow, Madison, WI, Karna A. Berg, St. Paul, MN, for Plaintiffs.

William F. Bauer, Coyne, Niess, Schultz, Becker & Bauer, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for declaratory, monetary and injunctive relief, plaintiffs Ardisam, Inc. and Spring Form, Inc. contend that defendants Ameristep, Inc., Hunter's View, Ltd. and Eastman Outdoors infringed plaintiffs' U.S. Patent No. 5,038,812 (the '812 patent), by making, using, selling

and offering for sale hunting blinds that utilize and embody the patented invention. The '812 patent discloses a "quickly erectable, quickly collapsible, self supporting portable structure." Plaintiffs bring their claim under 35 U.S.C. § 271. Jurisdiction is present. See 28 U.S.C. §§ 1331 and 1338.

Presently before the court are plaintiffs' motion to dismiss counts V (laches), VI (equitable estoppel) and VII (standing) of defendant Ameristep's counterclaim under Fed.R.Civ.P. 12(b)(6) and to strike Ameristep's factually-related affirmative defenses of laches, unclean hands, acquiescence, estoppel and express or implied license. Dft.'s Counterclaims and Affirmative Defenses, dkt. ## 6 & 7. (Because Ameristep is the only defendant involved with plaintiffs' motion, I will refer to Ameristep as "defendant.") Defendant has moved for a continuance under Fed.R.Civ.P. 56(f). Plaintiffs support their motion with evidence outside the pleadings and ask the court to convert their motion to dismiss to one for summary judgment. Fed.R.Civ.P. 12(b).

As an initial matter, I note that defendant has mislabeled its defenses as "counterclaims." Standing is a jurisdictional issue, not a counterclaim. Laches and equitable estoppel are affirmative defenses; one may not sue another under the doctrines of laches or equitable estoppel. I will consider plaintiffs' motion to dismiss defendant's *affirmative defenses* of laches and equitable estoppel.

Because both sides have approached plaintiffs' motion to dismiss as one for summary judgment by submitting proposed findings of fact that cite materials outside the pleadings, I will convert plaintiffs' motion to dismiss to one for partial summary judgment. Because the license agreement unambiguously provides plaintiff Ardisam the right to sue and the '812 patent holder is joined as a plaintiff in this suit, I will grant plaintiffs' motion for partial summary judgment on the standing issue. Because defendant fails to specify why it requires more discovery and how that discovery will help support its affirmative defenses of laches and equitable estoppel, I will deny defendant's request for a continuance. Because defendant fails to adduce enough evidence to show unreasonable conduct by plaintiffs or economic prejudice as a result of any delay, I will grant plaintiffs' motion for partial summary judgment on defendant's laches and equitable estoppel defenses and deny plaintiffs' motion to strike those defenses as unnecessary. Finally, because motions to strike are generally disfavored and defendant's affirmative defenses of acquiescence, express or implied license and unclean hands are not insufficient on their face, I will deny plaintiffs' motion to strike those defenses.

From the parties' proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. *The Parties*

Plaintiff Ardisam, Inc., d/b/a Yukon Tracks, is a Wisconsin corporation with its principal place of business in Cumberland, Wisconsin. Plaintiff Spring Form, Inc. is a California corporation with its principal place of business in Los Angeles, California. Charles Gayton is the president of Spring Form. Spring Form owns the rights and title to the '812 patent. In addition, Gayton is president of Pure Concepts, Inc. and owns the rights and title to U.S. Patent No. 4,825,892. Defendant Ameristep, Inc. is a Michigan corporation with its principal place of business in Clio, Michigan. Ameristep's products are readily observable and available at national retail chains, on the internet and at trade shows throughout the country.

### B. *The '812 Patent License Agreement*

On May 8, 2003, plaintiffs Spring Form and Ardisam entered into a license agreement concerning the '812 patent. The agreement states, in relevant part:

2.01 Licensor ... hereby grants to Licensee, and Licensee hereby accepts, an exclusive, non-divisible, non-assignable, non-sublicensable license under the Intellectual Property to manufacture, distribute and sell the Licensed Structures in the Territory. Licensee's rights and duties pursuant to this Agreement shall start on the Commencement Date and end on the Termination Date, unless terminated sooner as hereinafter provided.

11.02 Licensee will use its best efforts to detect every suspected infringement of the Intellectual Property in the Territory and on discovery of any suspected infringement, Licensee, at its sole cost and expense, shall undertake all necessary proceedings for effectively protecting and defending the Intellectual Property. Upon the occurrence of such an event, Licensor shall render assistance to Licensee in protecting and defending the Intellectual Property in the Territory provided no cost to Licensor is incurred. Licensor agrees that Licensee may use Licensor's name in such litigation relative to protecting the Intellectual Property in the Territory. Licensor agrees to execute documents necessary thereto and to take rightful oaths and declarations in order to assist the Licensee in protecting the Intellectual Property; provided, however, that Licensor shall not be at no expense in providing such assistance ... Should Licensee fail to defend any possible infringement of the Intellectual Property in the manner outlined above, Licensee's failure shall be deemed a material default of this Agreement and result in its automatic termination, without notice.

20.07 This Agreement shall be considered to have been executed in the County of Orange, State of California, United States of America, and shall be governed and construed by and in accordance with the laws of the State of California wherever possible and the parties hereby submit to the jurisdiction of the courts in the United States of America in the State of California as well as the courts of the State of California.

The agreement defines "Licensed Structures" as "Hunting and ice fishing blinds ONLY. Not for Camping or any other use." The agreement defines "Intellectual Property as US Patent # 5,038,812 and Canadian Patent # 2,065,019." The agreement defines "Territory" as "USA and Canada ONLY." The agreement's commencement date is April 30, 2003 and the termination date is April 13, 2008.

### C. *Current Lawsuit*

In late 1998 and early 1999, Gayton contacted defendant, stating that he held patents embodied in defendant's "Outhouse" and "Penthouse" hunting blinds. On March 10, 1999, John McConaghy forwarded copies of the '812 and '892 patents to defendant and asked whether it would be interested in licensing both the '812 and '892 patents. On March 31, 1999, defendant's attorney, Marshall McFarlane, informed McConaghy that he had reviewed both the '812 and '892 patents and that defendant had decided to adopt the design of an earlier, expired patent, U.S. Patent No. 3,675,667, instead of acquiring a license for the '812 and '892 patents. McFarlane asked McConaghy to review the '667 patent and defendant's proposal. On October 8, 1999, counsel for Pure Concepts acknowledged defendant's rights to use the expired '667 patent. Defendant confirmed its design change in a letter dated November 4, 1999, in which it enclosed copies of U.S. Patent Nos. 3,675,667

and 3,990,463 and noted that the redesign incorporated these patents. On January 6, 2000, defendant wrote to counsel for Pure Concepts and enclosed pictures of its new design. Defendant wrote that the design completely eliminated the "stable straight portion," an element of each claim of the '892 patent, and requested confirmation that the proposed hunting blind design did not infringe any of the '892 patent claims. The pictures defendant provided helped Pure Concepts and Spring Form conclude that defendant's hunting blind did not infringe either the '812 or '892 patents. Since 1999, defendant expanded its hunting blind product line and entered into license agreements with Yu Zheng.

At a trade show on February 15, 2003, Gayton observed one of defendant's hunting blinds that he believed infringed the '812 patent. On March 5, 2003, McConaghy alleged that the following products of defendant appeared to infringe the '812 patent: "The Doghouse TSC," "The Doghouse," "The Brick house TSC," "The Roundhouse 360 TSC" and "The Penthouse TSC."

On October 3, 2003, plaintiffs filed this lawsuit against defendant, alleging, among other things, infringement of the '812 patent. Plaintiffs' complaint does not identify which of defendant's products allegedly infringe the '812 patent. On October 27, 2003, defendant filed its answer and its affirmative defenses and counterclaim for patent invalidity. Defendant's counterclaim included the following counts: 1) count V, laches; 2) count VI, equitable estoppel; and 3) count VII, standing. Defendant asserted also that "plaintiffs' claims are barred by the equitable doctrines of laches, unclean hands, acquiescence and estoppel" and that defendant is expressly or impliedly licensed to use the technology of the '812 patent.

## OPINION

### A. *Motion for Partial Summary Judgment*

At the outset I must address plaintiffs' request that I convert their motion to dismiss to one for partial summary judgment on the issues of standing, laches and equitable estoppel and defendant's motion for a continuance. Because both parties have submitted proposed findings of fact citing materials outside the pleadings, I will convert plaintiffs' motion to dismiss to one for partial summary judgment. Defendant requests a continuance because it believes that discovery will clarify the relationships between the parties and the timing of important events. Dft.'s Br., dkt. # 22, at 13. Defendant states that discovery could uncover 1) information concerning what products of theirs plaintiffs allege infringe the '812 patent; 2) when Gayton first saw any products produced by defendant (and the identity of those products); and 3) the nature of the license and relationship between plaintiffs Ardisam and Spring Form, Inc. Hafner Aff., dkt. # 26, ¶ 4.

Defendant fails to explain how such information will help defeat plaintiffs' motion for summary judgment. Some of the information defendant seeks is already part of the court record, such as the information concerning which of defendant's products plaintiffs allege infringe the '812 patent and the nature of the license between the plaintiffs. It is undisputed that on March 5, 2003, McConaghy alleged that the following products appeared to infringe the '812 patent: "The Doghouse TSC," "The Doghouse," "The Brick house TSC," "The Roundhouse 360 TSC" and "The Penthouse TSC." Furthermore, plaintiffs have submitted a copy of the license agreement to the court. Gayton Aff., dkt. # 17, exh. # 18.

As to when Gayton first saw any products produced by defendant, even if I allowed defendant to seek such information, it could not change the outcome of the decision concerning defendant's defenses of laches and equitable estoppel; as I discuss below, defendant has failed to adduce enough evidence in its own possession to support those defenses. Because defendant fails to clarify its need for more discovery, I will deny its request for a continuance. *See United States v. On Leong Chinese Merchants Association Building,* 918 F.2d 1289, 1295 (7th Cir.1990) (upholding district court's denial of Rule 56(f) motion for claimant's failure to specify any information claimant could produce by deposing either adverse witnesses or witnesses under its control and for claimant's failure to demonstrate that it would discover facts sufficient to rebut government's showing of probable cause); *Kalis v. Colgate–Palmolive Co.,* 231 F.3d 1049, 1057–58 n. 5 (7th Cir.2000) ("Although a court may disregard a failure to formally comply with Rule 56(f), the opposing party's request for a continuance must clearly set out the justification for the continuance.") (citing *Pfeil v. Rogers,* 757 F.2d 850, 856 (7th Cir.1985)).

## 1. *Standing*

■ "Patentees" may bring an action for patent infringement under 35 U.S.C. § 281. "A patentee 'includes not only the patentee to whom the patent was issued but also the successors in title to the patentee.'" *State Contracting & Engineering Corp. v. Condotte America, Inc.,* 346 F.3d 1057, 1062 (Fed.Cir.2003) (citing 35 U.S.C. § 100(d)). The Court of Appeals for the Federal Circuit has held that "a conveyance of legal title by the patentee can be made only of the entire patent, an undivided part or share of the entire patent, or all rights under the patent in a specified geographical region of the United States." *Id.* Such a transfer is an assignment and vests the assignee with both title in the patent and the right to sue infringers. *Id.* "In contrast, less than a complete transfer of those interests constitutes a license and generally affords the licensee no right to sue for infringement." *Id.* However, if a licensee has some proprietary rights of the patent, such as the right to exclude others from making, using or selling the invention in the United States, the licensee is an "exclusive licensee" and has the right to sue under a patent as a co-plaintiff. *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.,* 52 F.3d 1026, 1031–32 (Fed.Cir.1995).

■ Plaintiffs argue that Spring Form entered into an exclusive license with Yukon Tracks, a division of plaintiff Ardisam. Defendant disagrees, contending that by limiting the license to Ardisam to "hunting and ice fishing blinds ONLY," Spring Form could allow other companies to produce or sell the invention under the '812 patent. According to defendant, a nonexclusive license exists between plaintiffs and therefore, plaintiff Ardisam has no standing to sue.

■ To resolve the issue of standing, a court must examine the licensing agreement to determine whether the parties intended to effect a transfer of proprietary rights to the licensee. *Ortho Pharmaceutical,* 52 F.3d at 1032. In this case, the licensing agreement submits the parties to the jurisdiction of the state of California, making California contract law applicable. *Id.* at 1033 (finding law of California appropriate under license agreement). "Under California law, the interpretation of a contract is a question of law, to the extent that it is based on the language of the agreement." *Intel Corp. v. United States International Trade Commission,* 946 F.2d 821, 826 (Fed.Cir.1991).

It is undisputed that in the license agreement, plaintiff Spring Form confers

the right to sue on plaintiff Ardisam. The language of the agreement obliges Ardisam to protect the '812 patent from infringement. This language is distinguishable from the language used between the licensor and licensee in *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed.Cir.2001), which allowed the licensee to sue only in the event the licensor failed to do so. In that case, the court concluded that in light of the licensor's retained rights, "particularly its initial right and obligation to sue for infringement," the licensee did not receive all substantial rights in the patent and therefore was not an exclusive licensee. *Id.* The court distinguished the case from *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed. Cir.1991), in which "the grant of the right to sue for infringement, subject only to the obligation to inform the patentee, was particularly dispositive of our conclusion that Vaupel was an exclusive licensee with all substantial rights in the patent and could bring suit in its own name."

Both the patent holder and licensee are plaintiffs in this lawsuit, a fact that further mitigates any standing issues for plaintiff Ardisam. *See, e.g., Prima Tek II, L.L.C. v. A–Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir.2000) (finding general rule that patentee should be joined, either voluntarily or involuntarily, in any infringement suit brought by exclusive licensee is prudential rather than constitutional in nature). The license agreement unambiguously provides plaintiff Ardisam the right to sue and the '812 patent holder is joined as a plaintiff in this suit. Therefore, I find that plaintiffs have standing to bring this action.

2. *Laches and equitable estoppel*

■■ A claim of laches requires "proof that the patentee unreasonably and inexcusably delayed filing suit and that the delay resulted in material prejudice to the defendant." *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371 (Fed.Cir.2001). An equitable estoppel claim requires that "1) the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer, 2) the alleged infringer relies on that conduct and 3) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." *Id.*

■ With respect to its laches defense, defendant argues that Gayton knew or should have known before October 3, 2003, that its hunting blinds infringed the '812 patent. For example, defendant contends that McConaghy demanded a 7% royalty on the "Penthouse" and "Outhouse" blinds in 1999, Dft.'s Br., dkt. # 22, at 9, and that because plaintiffs were aware of the "Penthouse" blind in 1999, one of the blinds allegedly infringing the '812 patent, plaintiffs should have been aware of defendant's alleged infringement of the '812 patent in 1999.

Defendant's argument is unavailing. It is undisputed that after defendant sent plaintiffs pictures of defendant's redesigned product on January 6, 2000, plaintiffs concluded that defendant's hunting blind did not infringe either the '812 or '892 patent. In early 2000, plaintiffs did not believe defendant's products infringed the '812 patent. They had no reason to bring an infringement suit at that time.

The parties offer little insight into their relationship between 2000 and 2003. However, it is undisputed that defendant's products are readily observable and available at national retail chains, on the internet and at trade shows throughout the country. It appears that defendant is arguing that through more diligent market research, plaintiffs could have discovered a possible infringement of the '812 patent by

defendants earlier than October 3, 2003, although defendant fails to make this argument directly. It is unclear whether defendant considers plaintiffs' inaction as an inexcusable delay, supporting its laches defense, or as misleading conduct supporting its equitable estoppel defense. In any event, the argument fails to support either defense. Defendant fails to rebut plaintiffs' assertion that the alleged infringing hunting blinds are different from those viewed by plaintiffs in early 2000. It is undisputed that defendant expanded its hunting blind product line in 1999. Defendant offers no evidence showing that the hunting blinds shown to plaintiffs in the January 6, 2000 letter were the same as the blinds in the expanded product line although such a showing would support defendant's argument of inexcusable delay or misleading conduct. Without such evidence, no reasonable jury could infer that plaintiffs would have expended significant resources policing defendant's products for infringement after both parties agreed in early 2000 that defendant's redesign proposal did not infringe the '812 patent.

■ However, even if I accept defendant's argument that plaintiffs should have been more diligent in monitoring defendant's products, defendant fails to show that plaintiffs' inexcusable delay or misleading silence caused it to suffer material prejudice, an element in both its laches and equitable estoppel defenses. *See, e.g., State Contracting & Engineering v. Condotte America,* 346 F.3d 1057, 1066 (Fed. Cir.2003) (in order to establish defense of laches, contractors had to prove that delay materially prejudiced them); *A.C. Aukerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d 1020, 1044 (Fed.Cir.1992) ("As with laches, the prejudice [for equitable estoppel] may be a change of economic position or loss of evidence.").

Defendant argues that it suffered economic prejudice when it expanded its "Outhouse" and "Penthouse" designs and entered into costly patent license agreements with Yu Zheng in 2001. Defendant alleges that it would not have taken such action had it known that plaintiffs still believed defendant was infringing the '812 patent after 1999. Economic prejudice arises when a defendant suffers the loss of monetary investments or incurs damages that likely would have been prevented by an earlier suit. *Aukerman,* 960 F.2d at 1033.

Other than conclusory statements, defendant offers no evidence to support its argument of economic prejudice. Defendant says that it has not taken any discovery on these issues. However, most, if not all, of the specific information required to show economic prejudice would be in defendant's possession, such as how much money it invested with Zheng or whether its expansion of its product line or investments with Zheng's patent licenses would qualify as economic prejudice or mere business decisions "to capitalize on a market opportunity." *Ecolab,* 264 F.3d at 1371–72 (finding that hiring of new employees, modification of equipment, engagement in sales and marketing activities related to new [product] are damages normally associated with finding of infringement and not the type of damages necessary for economic prejudice). Defendant neglects to adduce such evidence. Without it, defendant's defenses of laches and equitable estoppel fail. *See Bio–Technology General Corp. v. Genentech, Inc.,* 80 F.3d 1553, 1565 (Fed.Cir.1996) (finding no factual basis for equitable estoppel defense when party that raised it cited no evidence to support its assertion, other than conclusory allegations). As a result, I will grant plaintiffs' motion for summary judgment to dismiss defendant's affirmative defenses of laches and equitable estoppel.

### B. *Motion to Strike Affirmative Defenses*

In addition to moving to dismiss defendant's defenses of laches and equitable estoppel, plaintiffs move to strike defendant's "factually-related" affirmative defenses of laches, equitable estoppel, unclean hands, acquiescence and express or implied license. Dft.'s Affirmative Defenses, dkt. # 6, ¶¶ 5 & 9. "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir.1989). Defenses must set forth a "short and plain" statement of the defense. *See* Fed. R.Civ.P. 8(b). Although motions to strike are disfavored "because [they] potentially serve only to delay," *Heller Financial*, 883 F.2d at 1294; *see also United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir.1975), they can be useful in limited situations. "[W]here ... motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay," *Heller Financial*, 883 F.2d at 1294. An affirmative defense will be stricken "only when it is insufficient on its face," but a court may strike affirmative defenses that are "nothing but bare bones conclusory allegations." *Id.*

Having dismissed defendant's laches and equitable estoppel defenses, I will deny plaintiffs' motion to strike those defenses as unnecessary. Although the defenses of unclean hands, acquiescence and express or implied license may be factually related to the defenses of laches and equitable estoppel, I am unable to determine from the pleadings that these defenses are insufficient on their face. Because motions to strike are generally disfavored and the pleadings do not show that these defenses are insufficient on their face, I will deny plaintiffs' motion to strike the defenses of unclean hands, acquiescence and express or implied license.

## ORDER

IT IS ORDERED that

1. Defendant Ameristep, Inc.'s motion for a continuance under Fed.R.Civ.P. 56(f) is DENIED;

2. The motion for partial summary judgment filed by plaintiffs Ardisam, Inc., d/b/a Yukon Tracks and Spring Form, Inc. on the issue of standing and defendant's affirmative defenses of laches and equitable estoppel is GRANTED;

3. Plaintiffs' motion to strike defendant's affirmative defenses of laches and equitable estoppel is DENIED as unnecessary;

4. Plaintiffs' motion to strike defendant's affirmative defenses of unclean hands, acquiescence and express or implied license is DENIED.