## The SERVICEMASTER COMPANY L.P., a Delaware Limited Partnership, Plaintiff,

v.

## George A. RAMSAY and Norma Ramsay, individually and d/b/a ServiceMaster of Kearney, Defendants.

### No. 88 C 315.

United States District Court, N.D. Illinois, E.D.

July 15, 1988.

Edward N. Tiesenga, James A. Davids, Hoogendoorn Talbot Davids & Godfrey, Chicago, Ill., for plaintiff.

Geoffrey G. Gilbert, William J. Cooney, McBride Baker & Coles, Chicago, Ill., Kenneth C. Fritzler, Ross Schroeder & Fritzler, Kearney, Neb., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff ServiceMaster Company L.P. sues defendants George and Norma Ramsay for breach of a franchise agreement and trademark infringement. Its contract claim is predicated on diversity jurisdiction, 28 U.S.C. § 1332, and its trademark claim on the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* Defendants move to dismiss or transfer because of improper venue in this district.[1] That motion is granted.

Plaintiff, a Delaware corporation with its principal place of business in Downers Grove, Illinois, owns a worldwide franchise system that provides home and office cleaning and related services. Defendants are Nebraska residents who entered into an agreement with plaintiff to do business as a ServiceMaster franchisee in various Nebraska counties. The franchise agreement was negotiated through plaintiff's Downers Grove location. Partial performance required contact with plaintiff's Illinois headquarters, *i.e.*, training, extensive advertising aid and dispatch of periodic reports. The franchise agreement stipulates that Illinois law will govern the interpretation and application of its terms.

Plaintiff alleges that defendants breached the franchise agreement by not reporting gross service sales and by failing to pay monthly royalty fees (cplt. ¶ 14). Plaintiff terminated defendants' license on July 16, 1987. In count I plaintiff seeks contract damages and in count II seeks an injunction against defendants' continued operation as a ServiceMaster franchisee, including use of its advertisements, proprietary marks, current telephone numbers, manuals, records, files and other materials relating to the operation of the ServiceMaster franchise. In count III plaintiff seeks protection of ServiceMaster's federal-

---

1. Pursuant to discussion in open court we address only the issue of venue, and since venue is improper we need not consider the other issues raised by defendants' motion: personal jurisdiction over defendants in Illinois and transfer under 28 *U.S.C.* § 1404.

ly-registered marks, profits derived by defendants, and damages.

Because plaintiff relies on both diversity and federal question jurisdiction, venue for this case is controlled by 28 U.S.C. § 1391(b). That section provides:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

Neither of the defendants reside in this district and therefore venue is proper here only if plaintiff's claim arose here.

Courts use various formulae for determining where "the claim arose," although the inquiry is fact-intensive and often cannot be resolved through abstract doctrinal tests. Some courts in this jurisdiction have applied the "identity test," where venue is proper if the requirements of the Illinois long-arm statute are met. *E.g., Oce–Industries, Inc. v. Coleman,* 487 F.Supp. 548, 552 (N.D.Ill.1980). We do not agree with this position. The purposes behind the state's tests for personal jurisdiction differ from the concerns for venue, the latter being controlled by federal law. *Leroy v. Great Western United Corp.,* 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2716 n. 15, 61 L.Ed.2d 464 (1979) ("where 'the claim arose' for the purposes of federal venue under Section 1391 is a federal question whose answer depends on federal law"). Illinois' long-arm statute provides plaintiffs with the ability to serve parties who avail themselves of the privileges of transacting business in Illinois and whose activities thereby give rise to a cause of action, while the "purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Id.* at 183–84, 99 S.Ct. at 2716 (emphasis in original).

Most courts apply some form of the "weighing of contacts" test which looks to the district where there is the heavier balance of contacts with the litigants and witnesses. This appears to be the test used in *Leroy.* However, the provision for venue where the claim arose is an alternative to venue based on residence and therefore the test must be applied with less focus on the residence of the parties and more concern for the underlying circumstances of the claim. We ascertain where "the claim arose"

by advertence to events having operative significance in the case, and a common-sense appraisal of the implications of those events for accessibility to witnesses and records.

*Lamont v. Haig,* 590 F.2d 1124, 1134 (D.C. Cir.1978). *See Lyons S. & L. Assn. v. Westside Bancorporation,* 636 F.Supp. 576, 583 (N.D.Ill.1986).

We conclude that the events with operative significance for plaintiff's breach of contract and trade infringement claims occurred where the contract was to be performed—in Nebraska. Plaintiff correctly points out that the franchise agreement was formed and executed in Illinois, as were some of the elements of performance. The bulk of the performance expected under the agreement, however, was in Nebraska, as were the operative events underlying plaintiff's claims: defendants' failure to pay ServiceMaster's Nebraska representative, continued use of plaintiff's trademarks, performance of ServiceMaster services, operation as a franchisee, use of the ServiceMaster telephone numbers and listings, refusal to return plaintiff's manuals and business information, and competition with ServiceMaster franchisees in Nebraska. The relief plaintiffs seek would require enforcement in Nebraska. Indeed, the events constituting plaintiff's claim of trademark infringement—performance of services under ServiceMaster's federally-registered trademarks—did not occur in this district.[2] Given these events, we con-

---

**2.** Since plaintiff's trademark claim shares a common nucleus of facts with its breach-of-agreement claim, the two comprise a single cause of action. Therefore, we need not consider whether plaintiff's complaint forms two separate causes of action, both of which must "arise" in a single district. *See International Patent Development Corp. v. Wyomont Partners,* 489 F.Supp. 226, 230 (D.Nev.1980); Wright, Miller & Cooper, Federal Practice and Procedure, Section

clude that plaintiff's claims arose in Nebraska and that venue here under § 1391(b) is improper.

Admittedly, plaintiff's officers reside in Illinois and it would be easier for them if the trial were held here. In *Leroy*, however, the Supreme Court made clear that the venue provision affords convenience to defendants rather than plaintiffs.

> The statute allows venue in "the judicial district ... in which the claim arose." Without deciding whether this language adopts the occasionally fictive assumption that a claim may arise in only one district, it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts. Rather, it restricted venue either to the residence of the defendants or to "a place which may be more convenient to the litigants"— *i.e.*, both of them—"or to the witnesses who are to testify in the case." In our view, therefore, the broadest interpretation of the language of Section 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

443 U.S. at 184–85, 99 S.Ct. at 2717.

Plaintiff implies that its cause of action arises in two disricts and that it may choose whether to bring the action in Nebraska or Illinois. It is clear from the Supreme Court's discussion in *Leroy*, however, that cases where the cause of action arises in more than one district are rare. Although contacts were made in both Nebraska and Illinois, we see no reason to find two separate districts of origin. *J. Walker & Sons v. DeMert & Dougherty, Inc.*, 821 F.2d 399 (7th Cir.1987), one of the cases that plaintiff relies on, does not change our conclusion. That case involved a defendant that provided a majority of its services to customers in Illinois, even though the infringing marks were on products sold elsewhere. Here defendants conducted their business and have allegedly failed to perform the agreement in Nebraska. It is clear that this is the usual case where there is only one locus for the claims.[3]

It is unclear whether the court in *ServiceMaster Industries, Inc. v. Weigel*, No. 86 C 1323 (N.D. Ill. Sept. 25, 1986) (finding venue in this district proper on facts similar to the case here), applied the same test that we do. The court there found *Leroy* to stand for the proposition that a cause of action may arise in two locations, but did not describe that situation as the unusual case. *Weigel* also applied the "identity test" that we reject. In the alternative, the *Weigel* court concluded that the contacts resulting from performance of the agreements satisfied the weighing-of-contacts test. To the extent that that court's balancing of factors conflicts with our judgment here, we respectfully disagree.

Finally, plaintiff emphasizes the choice-of-law provision in the franchise agreement

---

3808 ("Multiple Claims: As between the original parties, in a case in which multiple claims are joined, the venue must be proper for each claim").

**3.** Plaintiff contends that defendants' purposeful affiliation and close contact with its Downers Grove headquarters provides the minimum contacts with Illinois to make it fundamentally fair for an Illinois court to exercise jurisdiction. That may be so, but since we do not apply the identity test these contacts do not necessarily establish venue. The franchise cases cited by plaintiff, *e.g.*, *Burger King v. Rudzewicz*, 471 U.S.

462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), concern personal jurisdiction and therefore do not control our venue determination. *McDonalds Corporation v. Lane*, No. 87 C 3007 (N.D. Ill. Oct. 15, 1987), cited by plaintiff, also does not lend relevant support. That case was removed under 28 U.S.C. § 1441(a) and venue was proper in that forum because it was "the district court of the United States for the district and division embracing the place where such action" was pending. *See Polizzi v. Cowles Magazines*, 345 U.S. 663, 666, 73 S.Ct. 900, 902, 97 L.Ed. 1331 (1953).

which makes Illinois law applicable to the contract. It may be more convenient, out of familiarity, to have the ruling court apply the law of the state in which it sits. While we consider the choice-of-law provision in our balance of contacts, we believe that the United States District Court in Nebraska can apply the correct choice-of-law provision to the franchise agreement and that plaintiff will not thereby be prejudiced.[4]

## CONCLUSION

We conclude that venue is improper in this district because the defendants do not reside here and the claims did not arise here.

---

**4.** Venue can be waived, but the franchise documents here do not contain any waiver.