VANGUARD FINANCIAL SERVICE
CORPORATION, Plaintiff,

v.

Larry JOHNSON, Rosie Medlock, Tim Brown, Cornelius McCowan, William Hill, T & M Mortgage, G.J. Roland, Joe C. Alfred, James Henderson, James Gaston, C.D. Brown, R.W. Leonard, Aldridge Mitchell, B.R. Walker, Bright and Morning Star Baptist Church, Faith of Deliverance Church of God in Christ, Full Gospel Deliverance Church of God in Christ, Beth Eden Baptist Church, Leath Street Baptist Church, New Community Church of God, St. Mark's Missionary Baptist Church, and Victory Missionary Baptist Church, Defendants.

No. 89 C 4044.

United States District Court,
N.D. Illinois, E.D.

April 3, 1990.

James L. Poznak, Siegel and Wille, Oakbrook Terrace, Ill., for plaintiff.

Stephen Pruter and Arthur S. Kallow, Hyatt Legal Services, Chicago, Ill., Joseph H. Mitchell, Dallas, Tex., and Grady B. Murdock, Jr., D'Ancona & Pflaum, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Plaintiff Vanguard Financial Service Corporation ("Vanguard") has sued the twenty-two defendants in this case on claims of breach of contract, fraud, and racketeering arising from office equipment leases into which Vanguard entered with eight churches in Dallas, Texas. The defendants include the churches, the church officials who executed the leases, the independent contractor who supplied the office equipment, and four lending officers who allegedly supplied false credit references to Vanguard on behalf of the churches. All of the defendants are residents of Texas. Eighteen of the defendants are in default.[1] Pending before the Court are three motions: Defendant Larry Johnson's motion to dismiss for lack of subject matter jurisdiction or, in the alternative, to transfer this case to the Northern District of Texas;

---

1. Although defendants Larry Johnson and Tim Brown have not responded to the amended complaint which Vanguard was given leave to file on November 28, 1989, both responded to Vanguard's original complaint: Johnson moved to dismiss the case for lack of subject matter jurisdiction or, in the alternative, to transfer the case to the Northern District of Texas, and Brown moved for a change of venue to that district as well. As set forth below, the Court has elected to address both of these motions, even though they were not renewed after Vanguard filed its amended complaint. Therefore, for purposes of the pending motions to dismiss and to transfer, the Court has not deemed Johnson and Brown to be in default. However, in light of its decision to transfer this case to the Northern District of Texas, the Court has elected not to address Vanguard's motion for entry of a default judgment. The Court is of the opinion that whether Johnson and Brown should be subject to such a judgment is therefore a matter for the Texas court to address.

defendant Tim Brown's motion to transfer the case to the Northern District of Texas; and finally, Vanguard's motion for the entry of judgment against all of the defendants who are currently in default. For the reasons set forth below, the Court has denied Johnson's motion to dismiss for lack of subject matter jurisdiction but granted Johnson and Brown's request to transfer this case to the Northern District of Texas. In light of the Court's decision to transfer the case, the Court has deemed it prudent not to rule upon Vanguard's motion for entry of a default judgment.

## II. BACKGROUND

### A. *Facts*

For purposes of the pending motions, the Court has assumed the allegations set forth in Vanguard's Amended Complaint to be true. *Reed v. Brae Railcar Management*, 727 F.Supp. 376, 377 n. 1 (N.D.Ill. 1989) (Aspen, J.).

Vanguard is an Illinois corporation engaged in the business of leasing and selling office equipment. Vanguard's principal place of business is located in Lombard, Illinois.

Vanguard relies upon independent contractors to locate customers who wish to lease office equipment. These contractors are typically sales representatives or dealers for the manufacturers of such equipment. When a contractor locates a prospective customer, the contractor has the customer complete a lease application, including credit references, for Vanguard's review. If Vanguard approves the application, Vanguard will proceed to purchase the equipment from the contractor and lease it to the customer pursuant to a written lease.

Defendant Larry Johnson was one of the independent contractors who provided Vanguard with customers. Johnson operated through a Texas company known as International Office Systems ("International"), selling office equipment to businesses like Vanguard for lease to customers located by Johnson and International.

In early 1988, Johnson entered into a conspiracy with the other defendants to defraud Vanguard, by persuading Vanguard to enter equipment leases with eight churches located in Dallas, Texas through a series of misrepresentations concerning the credit history of these churches.[2] Pursuant to this conspiracy, church officials would list either Bright Banc or T & M Mortgage as a credit reference on the lease applications.[3] These officials would also identify defendants Rosie Medlock and Tim Brown, who worked for Bright Banc, or defendants Cornelius McCowan and William Hill, who worked for T & M Mortgage, as the account officers on loans which the churches had purportedly received from these lending institutions. When Vanguard subsequently followed up on the information in the lease applications by making long-distance telephone calls from Illinois to Medlock, Brown, McCowan and Hill in Texas, these defendants represented to Vanguard that each of the churches had favorable credit histories with either Bright Banc or T & M Mortgage. In fact, none of the eight churches had a credit history of any kind with either of these two lenders.

Relying upon the misrepresentations as to the churches' credit histories, Vanguard prepared lease agreements and mailed them to each of the eight churches in Dallas. Church officials then executed the leases and returned them by mail to Vanguard in Illinois. Vanguard proceeded to purchase from International the office

---

2. These churches, each of which has been named as a defendant, include the following: Bright and Morning Star Baptist Church, Full Gospel Deliverance Tabernacle, Faith of Deliverance Church of God in Christ, Beth Eden Baptist Church, Leath Street Baptist Church, New Community Church of God, St. Mark's Missionary Baptist Church, and Victory Missionary Baptist Church.

3. The church officials named as defendants include the following individuals: G.J. Roland, Joe C. Alfred, James Henderson, James Gaston, C.D. Brown, R.W. Leonard, Aldridge Mitchell, and B.R. Walker. Most, if not all, of these individuals appear to have acted in the capacity of church pastor in completing the lease applications and leases. *See* Complaint, Exhibits 1–8 (lease applications) and 9–16 (executed leases).

equipment specified in each lease, mailing eight payments totalling $67,985 to Johnson and International in Texas. Johnson and International in turn tendered a portion of the money to at least one of the other defendants, and invested some portion of the remainder in the operation of International.

Each of the defendant churches has defaulted under its lease agreement with Vanguard by failing to make the rental payments due and owing on the office equipment. The churches presently owe Vanguard amounts totalling approximately $87,000.

### B. *Procedural History*

Vanguard filed its original complaint on May 17, 1989. Service was effected as to most of the defendants by July of 1989, and additional defendants were served in August of 1989. Defendant Hill was never served. With three exceptions, none of the defendants who have been served have either appeared or contested Vanguard's suit in any manner.[4]

On July 28, 1989, defendant Johnson filed *pro se* what amounts to both a motion to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(1) for lack of subject matter jurisdiction as well as an answer to the allegations contained in the complaint. Defendant Medlock filed an answer to the complaint on August 9, 1989. Counsel for Medlock subsequently filed their appearances on September 6, 1989. Counsel for defendant Brown filed their appearances on July 18, 1989, and on August 2, 1989, Brown moved to transfer the case to the Northern District of Texas. That motion became fully briefed on October 10, 1989.

On November 2, 1989, Vanguard moved for entry of judgment against each of the defendants in default, and asked the Court to award it the amounts due and owing under the equipment leases, treble damages pursuant to the RICO allegations, punitive damages based upon the defendants' alleged acts of fraud, costs, and attorney fees. The Court took the motion under advisement, having expressed some concern about the property of awarding treble and punitive damages upon the defendants' default, and as to whether Vanguard's complaint stated a cause of action under RICO.

Before the Court ruled on the motion for a default judgment, Vanguard requested leave to file an amended complaint which expanded upon and clarified the racketeering allegations set forth in the original complaint. The Court granted this request on November 28, 1989, and granted the defendants 21 days to answer or otherwise plead to the amended complaint. Shortly thereafter, the Court struck Vanguard's motion for default judgment as moot, and *sua sponte* granted the defendants an additional period of time, until January 16, 1990, to answer or otherwise plead. Defendant Medlock filed an amended answer on January 16, 1990. No other defendant responded to the amended complaint.

On January 31, 1990, Vanguard once again moved for entry of a default judgment against all of the defendants, with the exception of Hill, who was never served, and Medlock, who had filed an answer to the amended complaint. That motion is pending before the Court, as are Johnson's motion to dismiss or transfer and Brown's motion to transfer.

### III. ANALYSIS

### A. *Johnson's Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Pursuant to Fed.R.Civ.P. 12(b)(1), defendant Johnson has moved *pro se* to dismiss this case for lack of subject matter jurisdiction, arguing that diversity is lacking between the parties. Alternatively, Johnson argues that venue is improper in this district and requests that the case be transferred to the Northern District of Texas. In what appears to have been intended as a third alternative request for relief, Johnson has denied the allegations of the complaint

---

**4.** International was named as a defendant in Vanguard's original complaint, and, like the majority of the other defendants, failed to appear after being served. However, International was dropped as a defendant from Vanguard's amended complaint.

which pertain to him and prayed that "[p]laintiff take nothing in this action."

Johnson's motion arguably should simply be stricken as moot, because it was not renewed once the Court granted Vanguard leave to file its amended complaint. Johnson's failure to respond to the amended complaint might be explained by his *pro se* appearance, however. In any event, because Johnson has challenged the federal courts' subject matter jurisdiction over this suit, the Court deems it prudent to address at least that portion of his motion.

■ Johnson argues the Court lacks subject matter jurisdiction over this case, in that Vanguard is licensed to do business in Texas and in fact actively engages in business activity there, and thus diversity is lacking as between Vanguard and the defendants. Johnson's argument fails for two reasons. First, subject matter jurisdiction in this case is premised not solely upon diversity of citizenship, but upon a federal question, namely, Vanguard's RICO claim. *See* Amended Complaint, ¶ 1; 18 U.S.C. § 1964(a). Second, the fact that Vanguard is licensed to do business in Texas and in fact does business there does not destroy the diversity of citizenship between Vanguard and the defendants. For purposes of the diversity statute, Vanguard is considered to be a citizen of any state by which it has been incorporated and of the state in which it maintains its principal place of business. 28 U.S.C.A. § 1332(c)(1) (West Supp.1989). Vanguard has alleged that Illinois is both the state of its incorporation and the state where it maintains its principal place of business. Amended Complaint, ¶ 2. Accordingly, absent some showing that Vanguard's principal place of business is not actually located in Illinois, Vanguard is properly considered an Illinois citizen for diversity purposes. Johnson's assertion that Vanguard does business in Texas does not suggest that Vanguard should also be considered a citizen of Texas, for Johnson has not alleged that Texas is home to Vanguard's principal place of business. Accordingly, Johnson's motion to dismiss the case for lack of subject matter jurisdiction is denied.

Johnson has not supplied the Court with any argument in support of his alternative request for transfer of this case to the Northern District of Texas, where he resides. However, the Court has considered the merits of transfer below upon defendant Brown's motion.

Johnson's answer on the merits of the complaint must be considered moot in light of Vanguard's amended complaint. Given that the Court has elected to consider and rule upon the motion to dismiss into which this answer was incorporated, it may be appropriate to afford Johnson an additional opportunity to respond to the amended complaint. Defendant Brown, whose motion to transfer the Court has considered and granted below, may be entitled to the same opportunity. However, this is a matter best addressed by the District Court for the Northern District of Texas following transfer of the case, and accordingly this Court will not undertake to express an opinion on the subject. *See* n. 1, *supra.*

B.  *Brown's Motion to Transfer*

Also pending before the Court is defendant Brown's motion to transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Like Johnson, Brown failed to renew his motion once Vanguard was given leave to file its amended complaint. However, the motion to transfer was fully briefed and under advisement prior to the amendment, and nothing in Vanguard's amended complaint affects the merits of the motion. For these reasons, and because transfer motions invoke issues of fairness and judicial economy, the Court deems it prudent to address the motion on its merits.

Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The authority to transfer a case to another district was bestowed upon the district courts to spare the parties and their witnesses undue expense and inconvenience and to further the interests of judicial econ-

omy. *Countryman on Behalf of Upstate New York Pension and Retirement Fund v. Stein Roe & Farnham*, 681 F.Supp. 479, 481 (N.D.Ill.1987) (Williams, J.). The resolution of a § 1404(a) motion to transfer rests within the sound discretion of the district court. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir.1989). The Court engages in a two-part analysis in arriving at its decision. The Court first inquires whether venue is proper both in this judicial district (the transferor district) and in the district to which transfer is urged (the transferee district). If the Court determines that venue properly lies in both districts, it then proceeds to the second part of the analysis and considers the convenience of the parties and their witnesses together with the interest of justice. *Waller v. Burlington Northern R. Co.*, 650 F.Supp. 988, 989–90 (N.D.Ill.1987) (Bua, J.); *Centaur Ins. Co. v. Mission Ins. Group., Inc.*, 620 F.Supp. 1492, 1494 (N.D.Ill.1985) (Bua, J.).

1. Venue in the Northern District of Illinois

■ Jurisdiction in this case is founded upon both a federal claim under RICO and diversity of citizenship among the parties. Accordingly, the Court looks to 28 U.S.C. § 1391(b) to determine where venue properly lies. § 1391(b) provides:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

Venue statutes such as § 1391 are designed " 'to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial.' " *Payne v. Marketing Showcase, Inc.*, 602 F.Supp. 656, 658 (N.D.Ill.1985) (Decker, J.) (empha-

sis in original). Accordingly, the convenience of the plaintiff is irrelevant to the assessment of where venue properly lies under § 1391(b). *General Bedding Corp. v. Echevarria*, 714 F.Supp. 1142, 1146 (D.Kan.1989); *ServiceMaster Co. L.P. v. Ramsay*, 690 F.Supp. 704, 706 (N.D.Ill. 1988) (Moran, J.).

In this case, because none of the defendants reside in the Northern District of Illinois, the Court must determine that Vanguard's claim arose in this district in order to find venue proper here.[5]

"[T]he determination of where 'the claim arose' for purposes of federal venue under § 1391 is a federal question whose answer depends on federal law." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2716 n. 15, 61 L.Ed.2d 464 (1979). Although "a 'claim' under federal law is generally defined as 'the *aggregate* of operative facts which give rise to a right enforceable in the courts[,]' " *Davis v. Costa–Gravas*, 580 F.Supp. 1082, 1088 (S.D.N.Y.1984) (citation omitted), "where the claim arose" has not been generally defined. Instead, the courts have applied various tests.

*General Bedding Corp., supra*, 714 F.Supp. at 1144–45 (footnote omitted) (emphasis in original). *See also ServiceMaster Co.*, 690 F.Supp. at 705. Courts in this district have based their conclusions as to where the plaintiff's claim arose upon the location of the "events having operative significance in the case," *Lyons Savings & Loan Assoc. v. Westside Bancorporation, Inc.*, 636 F.Supp. 576, 583 (N.D.Ill.1986) (Moran, J.) (citations omitted), *judgment aff'd*, 828 F.2d 387 (7th Cir.1987), and upon "a common sense appraisal of the implications of those events for accessibility to witnesses and records," *Payne*, 602 F.Supp. at 660. *See also First Financial*

---

5. The provisions of RICO do not otherwise supply a basis for venue in this district. 18 U.S.C. § 1965(a) provides:

Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

In this case, all of the defendants are Texas residents, and there is no indication that any of them transact their affairs in this district, have agents here, or may otherwise be deemed "found" in the Northern District of Illinois. *See generally Payne v. Marketing Showcase, Inc.*, 602 F.Supp. at 658–59 (discussing showing required to establish propriety of venue under § 1965(a)).

*Leasing Corp. v. Hartge,* 671 F.Supp. 538, 542 (N.D.Ill.1987) (Hart, J.).

Vanguard contends that Brown has effectively conceded that venue is proper in the Northern District of Illinois by bringing his motion to transfer under § 1404(a), which governs transfers from districts in which venue is proper in the first instance, rather than § 1406(a), which governs transfers from districts in which venue is improper. For this argument Vanguard relies upon *Countryman, supra,* in which the court observed in passing that the defendants had apparently conceded that venue was proper in the transferor district by filing their motion to transfer under § 1404(a) rather than § 1406(a). 681 F.Supp. at 482 & n. 3. However, this Court is unwilling to draw from *Countryman* the unyielding rule proposed by Vanguard, i.e. that whenever a defendant moves to transfer under § 1404(a), it must be deemed to have waived any objection to venue in the transferor court. Although Brown should have addressed the propriety of venue in the Northern District of Illinois, in fact his memoranda are entirely silent on this issue. Thus, in this Court's view, Brown has made no explicit waiver with respect to the propriety of venue in this district. Moreover, given that the Court's authority to transfer a case under either § 1404(a) or § 1406(a) invokes equitable considerations, and, indeed, the Court has the authority to transfer a case upon its own motion, *Washington Public Utilities Group v. United States District Court for the Western District of Washington,* 843 F.2d 319, 326 (9th Cir.1987) ("[S]ection 1404(a) does not expressly require that a formal motion be made before the court can decide that a change of venue is appropriate."); *Miller v. County of Passaic, New Jersey,* 699 F.Supp. 409, 411 (E.D.N.Y.1988), it would be inappropriate for the Court to conclude that it cannot independently examine the propriety of venue under § 1391(b) simply because Brown has failed to argue this issue.

■ With the exception of its waiver argument, Vanguard has not addressed the propriety of venue in this district *per se.*

However, in opposing transfer, Vanguard has argued generally that the case should be litigated in this district pursuant to the forum selection clauses contained in each of the equipment leases which the church lessees signed. This clause provides:

THIS LEASE SHALL BE GOVERNED AND CONTROLLED AS TO VALIDITY, ENFORCEMENT, INTERPRETATION, CONSTRUCTION, EFFECT, AND IN ALL OTHER RESPECTS, INCLUDING, BUT NOT LIMITED TO, THE LEGALITY OF THE INTEREST CHARGED HEREUNDER, BY THE STATUTES, LAWS AND DECISIONS OF THE STATE OF ILLINOIS, WHICH IS THE STATE IN WHICH LESSOR'S PRINCIPAL PLACE OF BUSINESS IS LOCATED. THIS LEASE IS SUBMITTED TO LESSOR AT ITS PRINCIPAL PLACE OF BUSINESS STATED ABOVE AND SHALL BE DEEMED TO HAVE BEEN MADE THERE AT AND UNLESS THE LESSEE IS OTHERWISE NOTIFIED IN WRITING SHALL BE PAYABLE AT SAID ADDRESS. LESSEE, IN ORDER TO INDUCE LESSOR TO ENTER INTO THIS LEASE AND FOR OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY, INDIRECTLY OR OTHERWISE IN CONNECTION WITH, OUT OF, RELATED TO, OR FROM THIS LEASE SHALL BE LITIGATED AT LESSOR'S DISCRETION AND ELECTION ONLY IN COURTS HAVING SITUS WITHIN THE STATE OF ILLINOIS. THE UNDERSIGNED HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF ILLINOIS. LESSEE HEREBY WAIVES (1) ANY RIGHT LESSEE MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST LESSEE BY LESSOR HEREUNDER, AND (2) ANY RIGHT TO TRIAL BY JURY.

(Complaint, Exhibits 9–16, ¶ 14.) The Seventh Circuit has recently stated that "Such a forum selection clause should control unless there is a 'strong showing that it should be set aside.'" *Heller Financial, Inc. v. Midwhey Powder Co., supra,* 883 F.2d at 1290–91, *quoting M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972) (additional citation omitted). Of course, the defendant who consents to a forum selection clause waives only his right to request a transfer on the ground of his own inconvenience; he does not surrender his right to object to venue which is otherwise burdensome to the witnesses or contrary to the interest of justice. *See id.* at 1293 ("[O]nly one of § 1404(a)'s factors—convenience of the parties—is within the parties' power to waive.") Nonetheless, in light of the fact that the foregoing forum selection clause deems each lease to have been made in Illinois and to be governed by Illinois law, the Court assumes that Vanguard's breach of contract claims against the church lessees may be deemed to have arisen in the Northern District of Illinois. Accordingly, the Court finds that venue is therefore proper in this district as to the eight church defendants on the breach of contract claims.[6]

■ This conclusion does not end the inquiry, however, for venue must be proper as to all defendants. *Payne,* 602 F.Supp. at 658. Unlike the church lessees, the fifteen individual defendants have not contractually consented to litigate any claims relating to the office equipment leases in this forum. Furthermore, Vanguard's claims against the individuals are ones based upon allegations of fraud and racketeering, and although these claims are related to the leases, they are not, like the breach of contract claims, claims for enforcement of the leases. Accordingly, the church's consent to venue in the Northern District as to the breach of contract claims cannot be imputed to the other defendants with respect to the fraud and RICO claims;

the Court must examine venue as to the latter claims independently.

■ Upon examination of the "operative facts" underlying Vanguard's fraud and RICO claims, the Court concludes for purposes of § 1391(b) that these claims arose in the Northern District of Texas. The foundation for these claims is Vanguard's allegation that the defendants engaged in a scheme to fraudulently induce Vanguard to enter into the equipment leases. All of the defendants are Texas residents, and nowhere in the complaint is it alleged that the defendants travelled outside of Texas for purposes of implementing any aspect of the alleged scheme. Indeed, from the face of the complaint, it is evident that the defendants' only contacts with Vanguard in Illinois occurred through correspondence and telephone conversations. Such interstate communications directed to an Illinois resident are sometimes found sufficient to support the exercise of personal jurisdiction over non-resident defendants by the Illinois courts. *See, e.g., FMC Corp. v. Varonos,* 892 F.2d 1308, 1312–13 (7th Cir.1990); *L.B. Foster Co. v. Railroad Service, Inc.,* 734 F.Supp. 818, 822–24 & n. 9 (N.D.Ill.1990) (Rovner, J.); *Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341, 347 (N.D.Ill.1984) (Shadur, J.). In this case, however, the Court does not find them sufficient to serve as the operative events for purposes of venue. *See ServiceMaster Co., supra,* 690 F.Supp. at 705 (rejecting view that venue is proper if requirements for personal jurisdiction have been satisfied). Viewing Vanguard's complaint with a practical eye, the Court finds that the operative events underlying Vanguard's fraud and racketeering claims took place in Texas. Assuming the truth of Vanguard's allegations, it was in Texas that the defendants agreed among themselves to defraud Vanguard, it was there that church officials completed the lease applications which contained the false credit references and mailed them on to Vanguard, it was from

---

**6.** Arguably, this conclusion applies with equal force to Vanguard's fraud and RICO claims against the churches, because these claims are related to the leases. This does not affect the Court's decision as to the merits of transfer, however, in view of the Court's conclusion below that the operative facts underlying these claims took place in the Northern District of Texas and the fact that the individual defendants have not contractually consented to venue in the Northern District of Illinois.

Texas that Medlock, Brown, McCowan and Hill made the misrepresentations concerning the church's credit histories vis a vis F & M Mortgage and Bright Banc, and it was in Texas that Johnson and International received payment from Vanguard and used the money, in part, to continue the operations of International. In sum, the defendants' alleged conspiracy was formulated and implemented within Texas borders. *Cf. First Financial Leasing Corp. v. Hartge, supra,* 671 F.Supp. at 543–44 (in action alleging that defendants violated RICO by fraudulently inducing plaintiff to purchase machinery and lease it back to defendants, despite defendants' contacts with plaintiff in Illinois by telephone and by mail, court concludes for purposes of § 1391(b) that plaintiff's claim arose in Missouri, where all but one defendant resided); *Payne v. Marketing Showplace, Inc., supra,* 602 F.Supp. at 658–59 (court concludes that although plaintiff received alleged misrepresentations by mail and wire in Chicago, scheme to defraud must have taken place in New York, where, *inter alia,* all defendant corporations and most corporate officers resided, where pertinent mail and wire communications originated, where funds were diverted and invested, and where principal witnesses lived). Without question, Vanguard has suffered the injury from the defendant's alleged wrongs in Illinois, but that fact is insufficient to shift the locus of Vanguard's claim away from Texas. *First Financial Leasing Corp.,* 671 F.Supp. at 543; *Lyons Savings & Loan Assoc.,* 636 F.Supp. at 584.

Turning next to the evidence which bears upon the alleged conspiracy, the Court finds a strong likelihood inherent in the circumstances of this case that the bulk of the relevant evidence will be found in Texas. Some portion of Vanguard's evidence is no doubt located in the Northern District of Illinois—employees who telephoned Medlock, Brown, McCowan and Hill to follow up on the church's credit references, for example, as well as the paperwork documenting these phone calls (*see, e.g.,* Exhibits 1–8, "Bank References"), the lease applications, and other information found in its customer files. However, because the alleged conspiracy was formed and implemented in Texas, the key witnesses to both the conspiracy and any acts which the defendants took in furtherance of the conspiracy, including the individual defendants themselves, will be found within Texas.

Finally, the Court must consider the convenience of the defendants. *Lyons,* 636 F.Supp. at 584–85; *Payne,* 602 F.Supp. at 660.[7] Given that there are numerous defendants, that many of them are individuals, that all of them live in Texas, and that none of them engaged in conduct relevant to Vanguard's complaint outside Texas borders, the scales of equity weigh heavily against venue lying in the Northern District of Illinois.

For all of the reasons discussed above, the Court has concluded that Vanguard's claim against the individual defendants arose in the Northern District of Texas rather than the Northern District of Illinois. Accordingly, venue in this district is not proper under § 1391(a) as to all defendants, and the case must be transferred.[8]

### 2. Venue in the Northern District of Texas

■ Of course, the Court's conclusion that venue is improper in this district nec-

---

**7.** In *General Bedding Corp. v. Echevarria, supra,* the court indicated that factors such as the accessibility of the evidence and the convenience of the defendants need only be addressed in the "unusual" case in which it is not clear where the operative facts underlying the plaintiff's claim took place. The Court does not consider this to be such an unusual case, but has nonetheless addressed these additional factors because they lend additional support to the conclusion that Vanguard's claim arose in the Northern District of Texas, and because courts in this district routinely address the convenience of the defendants and accessibility of the evidence without first deciding whether the circumstances of a case are so "unusual" so as to require discussion of these factors. *See Lyons,* 636 F.Supp. at 583–84; *Payne,* 602 F.Supp. at 660.

**8.** "A district court has authority to transfer an entire case rather than to split actions against multiple defendants." *CAT Aircraft Leasing, Inc. v. Cessna Aircraft Co.,* 650 F.Supp. 57, 61 (D.Virgin Islands 1986), citing *Teleprompter Corp. v. Polinsky,* 447 F.Supp. 53, 55–56 (S.D.N.Y.1977). In this case, little purpose would be served by retaining jurisdiction over claims against the church defendants and transferring the remaining claims and defendants to the

essarily terminates analysis under § 1404(a) and invokes the provisions of § 1406(a). That section provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Under § 1406(a), dismissal is warranted as a penalty for obvious mistakes. *See Saylor v. Dyniewski*, 836 F.2d 341, 345 (7th Cir.1988); *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir.1986). Here the Court does not consider the fact that Vanguard filed suit against the defendants in this district to have been an obvious mistake. Determinations as to where various claims arose are necessarily fact specific and may thus be the subject of good faith, reasonable disagreements among counsel. Moreover, the forum selection clauses agreed to by the churches rendered venue in this district proper as to those defendants. Accordingly, the Court deems it appropriate not to dismiss the case but to transfer it to a district in which it might have been brought in the first instance.

The Northern District of Texas is the obvious and sole forum in which venue would be proper. Although Vanguard's breach of contract claims against the church defendants may not have arisen in that district, venue is nonetheless proper in the Northern District of Texas as to all of the defendants based upon the fact that each of them resides in that forum. Accordingly, the Court will order this case transferred to the Northern District of Texas.

3. The convenience of the parties and the witnesses, and the interest of justice

█ If the Court had concluded that venue were proper in the Northern District of

Illinois, it would nonetheless have ordered the case transferred to the Northern District of Texas, because it has further determined that such a transfer furthers the convenience of the parties, the convenience of the witnesses, and the interest of justice.

### a. Convenience of the parties

Although neither Brown nor Vanguard has made anything more than a conclusory argument with respect to the burdens of litigating in the Northern District of Texas as opposed to this district, the balance of equities in this case is fairly obvious. This is not a case, as Vanguard suggests, in which a transfer will simply shift an equal burden from one party to another. *See Feldman Associates v. Lingard & Associates, Inc.*, 676 F.Supp. 877, 881 (N.D.Ill. 1988) (Bua, J.). There are twenty-three defendants in this case, fifteen of whom are individuals. The collective burden imposed upon these individuals by having to litigate this case in Chicago is necessarily greater than the burden which will be imposed upon Vanguard, the sole plaintiff, by transferring the case to Texas. *Cf. Heller Financial, Inc. v. Riverdale Auto Parts, Inc.*, 713 F.Supp. 1125, 1130–31 (N.D.Ill. 1989) (Norgle, J.) Moreover, Vanguard is a corporation, and the injuries for which it seeks redress in this action arise from business relationships with Texas entities into which it voluntarily entered. It is thus not unreasonable to impose upon Vanguard the burden of traveling to Texas in order to enforce its rights, nor should such a burden have been entirely unforeseeable to Vanguard when it entered into these relationships. As to this point, the Court is not ignoring the forum selection clauses in the leases which Vanguard prepared, but those clauses can only be considered binding as to the lessees, as the Court has stated.[9] In its effort to impose liability upon the individual defendants as well, Vanguard has

Northern District of Texas. The claims raised in this suit are interrelated, and dividing the case and defendants in this manner would merely result in needlessly duplicative litigation. *See CAT Aircraft*, 650 F.Supp. at 61.

9. Furthermore, although the plaintiff's choice of forum is normally entitled to some deference, it carries no greater weight than any other factor when the chosen forum lacks a significant connection with the plaintiff's cause of action,

implicated other interests which, on balance, outweigh the significance of the forum selection clauses. *Cf. Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d at 1293 (district court must consider convenience of witnesses and interest of justice even when defendant bound by a forum selection clause).

The Court is not persuaded that the failure of the majority of the defendants to appear constitutes a reason not to transfer this case. Three of the individual defendants have made efforts of one form or another to respond to Vanguard's complaint, and, as Texas residents, each of them unquestionably will be spared a significant burden if the case is transferred. As to the other defendants, the Court can only speculate as to the reasons for their default, although the distance of this forum from Texas may be one explanation. In any case, the Court is unwilling to assume, as Vanguard would have it, that the defendants who have not appeared have no interest in where this case is litigated. Finally, should the Texas District Court determine upon transfer that these defendants have already enjoyed sufficient opportunities to contest Vanguard's complaint and that judgment should enter upon their default, transfer will nonetheless have served an important purpose with respect to the convenience of the parties. Vanguard asks the Court to enter a judgment not only for the amounts due under the equipment leases, but treble damages, punitive damages, and substantial attorneys' fees and costs. In addition, it wishes to impose joint and several liability among the defendants for these amounts. Transfer of the case at this stage will at minimum afford the defendants a more accessible forum in which to challenge Vanguard's request for such a judgment.[10] This opportunity serves not only the defendants' interests, but ultimately Vanguard's as well, for the entry of a judgment in this forum means nothing to Vanguard if it is later susceptible to attack on the ground that the defendants were not afforded sufficient opportunity to contest the terms of the judgment.

#### b. *Convenience of the witnesses*

As to the convenience of the witnesses, the Court has already observed that this factor favors transfer to Texas. The majority of the witnesses to the alleged conspiracy and scheme to defraud, including the defendants themselves, will necessarily be found in Texas. Of course, some of Vanguard's employees, particularly those who dealt with Johnson and those who followed up on the churches' credit histories, will be important witnesses should this case proceed to trial against any of the defendants. Nonetheless, the defendants are both numerous and diverse in terms of the roles they allegedly played in the scheme to defraud Vanguard, and in this context the Court finds it highly improbable that individuals who reside in Texas and witnessed the defendants' conduct would be exceeded in either number or significance by Vanguard's Illinois witnesses. Accordingly, the Court concludes that the convenience of the witnesses also favors transfer to the Northern District of Texas.[11]

---

*Trademasters International, Inc. v. Borer*, 687 F.Supp. 434, 435 (N.D.Ill.1988) (Bua, J.), or when that cause of action did not conclusively arise in the chosen forum, *Countryman, supra*, 681 F.Supp. at 483. In concluding that Vanguard's fraud and RICO claims did not arise in the Northern District of Illinois for purposes of § 1391(b), the Court indicated that the operative events underlying these claims occurred in the Northern District of Texas. This same factor negates whatever special weight Vanguard's choice of forum might ordinarily carry in transfer analysis, at least as to Hill and the other individual defendants, who did not consent to venue in the Northern District of Illinois. *Cf. Heller Financial, supra*, 713 F.Supp. at 1129–30.

10. For example, the defendants might wish to contest Vanguard's request for punitive damages. At least one other court has rejected a similar request when treble damages were available to the plaintiff. *See Chemical Bank v. DJ Restaurant*, 1986 WL 5649 (N.D.Ill. May 4, 1986) (Williams, J.) ("Because the damages here will be trebled, the court sees no reason to inflict further punishment and assess punitive damages against defendants.").

11. As Vanguard correctly observes, the burden falls upon the party seeking transfer to identify with some specificity both the witnesses who reside in the proposed transferee forum and the significance of their testimony. *Heller Finan-*

### c. *The interest of justice*

The interest of justice encapsulates a number of factors, which include the relative ease of access to sources of proof, the amenability of unwilling witnesses to service of process, the forum community's tie to the issues at stake in the litigation, the prospects for a speedy trial, and, in a diversity case, the relative familiarity with the state law which governs the plaintiff's claims. *See Heller Financial, Inc. v. Midwhey Powder Co., supra,* 883 F.2d at 1293; *Letter–Rite, Inc. v. Computer Talk, Inc.,* 605 F.Supp. 717, 721 (N.D.Ill.1985) (Shadur, J.). On balance, these factors also weigh in favor of transfer.

The Court has already noted that the majority of likely witnesses reside in Texas. Documentary evidence will also be important to Vanguard's case, and much of that evidence, including the lease applications, leases, documentation of Vanguard's credit investigations, and other relevant documents in Vanguard's files pertaining to the defendant churches, is located in Illinois. But such evidence is neither voluminous nor difficult to photocopy, and thus its location is of little significance. *See Associated Mills, Inc. v. Rush–Hampton Industries, Inc.,* 588 F.Supp. 1164, 1166–67 (N.D.Ill.1984) (Shadur, J.) Accordingly, the Court finds it more important in terms of the accessibility of sources of proof that the majority of the likely witnesses reside in the Northern District of Texas.

The Texas court will also enjoy the advantage of having subpoena power over any Texas resident who might be an unwilling witness. For the most part, it would appear that Vanguard's witnesses are its own employees; thus, there is no evident need for the use of subpoenas to compel the attendance of its witnesses, and the Texas District Court would not be disadvantaged in this respect. *Cf. Sterling Novelty, Inc. v. Smith,* 700 F.Supp. 408, 410 (N.D.Ill.1988) (Bua, J.). The Court cannot make the same assumption about the defendants' witnesses living in Texas, however; and to the extent any of these witness are reluctant to testify, the authority to subpoena their testimony, which this Court lacks, cannot be discounted. *Cf. First Financial Leasing Corp. v. Hartge, supra,* 671 F.Supp. at 543 (observing that because some of the defendants had failed to appear and might thus be unavailable as witnesses in Illinois, it was desirable to transfer the case to forum where all but one defendant lived).

In a practical sense, the Court also finds that Texas has a greater tie to the events underlying this litigation. Each of the many defendants resides in that state, the alleged conspiracy germinated and came to fruition there, the office equipment which is the subject of the leases at issue in this case was used there, and the defendants' profit from the scheme was distributed and invested there. In contrast, Illinois' only real connection to the litigation lies in the fact that Vanguard is an Illinois corporation. Of course, Vanguard contends that the leases should be deemed to have been made in Illinois, and in a technical sense, Vanguard may well be correct, if for no other reason than the provisions contained in the forum selection clause of each lease. In fact, however, the leases were signed in Texas, the alleged misrepresentations upon which Vanguard relied in agreeing to enter the leases originated in Texas, and the office equipment governed by the leases was delivered to Texas for use in that state. Thus, with respect to not only the fraud and RICO claims, but the breach of contract claims as well, the Court finds a greater tie to Texas than to Illinois.

As to the familiarity with the governing body of law, the Court finds that a court in neither forum enjoys an advantage. The Court assumes that Illinois law will govern interpretation and enforcement of the leases, in view of the forum selection and choice of law provisions recited earlier. As

---

*cial, Inc. v. Midwhey Powder Co., supra,* 883 F.2d at 1293–94. Brown has not done so, but for that matter, neither has Vanguard. In any case, Brown's failure to produce a roster of prospective witnesses should not be deemed fa-

tal to his motion to transfer, particularly when it is apparent without further explanation that all of the defendants and most, if not all, of their witnesses reside in the transferee forum. *See Countryman, supra,* 681 F.Supp. at 483–84.

Vanguard points out, the RICO claim is governed by federal law and that body of law is equally familiar to any district court. As to the fraud claims, given that the underlying scheme to defraud was born and implemented in Texas, the Court finds it likely that Texas law will govern.[12] Accordingly, this factor is a wash with respect to the merits of transfer.

The Court finds the likelihood of a speedy trial similarly inconclusive. The most telling statistic with respect to docket congestion is the average number of weighted filings in each district. *Letter–Rite, Inc. v. Computer Talk, Inc., supra*, 605 F.Supp. at 722. Here the two districts are roughly equal, for the figure for the twelve-month period ended June 30, 1989 was 626 for the Northern District of Texas, and 603 for the Northern District of Illinois. Thus, the Court finds that neither district holds a significant advantage with respect to this factor.

On balance, however, the Court finds that most of the considerations encompassed by the interest of justice point toward the Northern District of Texas as the preferable forum for this action. Because the convenience of the parties and the witnesses also favor that district, the Court concludes that transfer would be in order under § 1404(a) as well as § 1406(a).

### C. *Vanguard's Motion for Default Judgment*

■ In light of the Court's decision to transfer this case, the Court finds it prudent for a number of reasons to withhold ruling upon Vanguard's motion for entry of judgment against the defendants in default and permit the District Court for the Northern District of Texas to address that motion. This Court enjoys no particular insight as to the merits of the motion, given that the proceedings conducted in this case to date have been minimal. At the same time, holding the motion in abeyance pending transfer will permit the motion to be entertained in a forum which is much more accessible to each of the defendants, thus affording them a more meaningful opportunity to raise any defenses to the entry of default or to Vanguard's request for an award of damages and finding of joint and several liability for that amount. Finally, because the Texas District Court will be presiding over further proceedings concerning those defendants not in default, permitting that court to handle Vanguard's request for a default judgment against the other defendants will serve the public interest in judicial consistency and economy.

### IV. CONCLUSION

For the reasons set forth above, the Court concludes this Court does possess subject matter jurisdiction over this action. Accordingly, defendant Johnson's motion to dismiss the case is denied. However, the Court further concludes that venue is improper in this forum pursuant to 28 U.S.C. § 1391(b) as to plaintiff's fraud and racketeering claims against the individual defendants and, in addition, that the convenience of the parties and the witnesses, together with the interest of justice, weigh in favor of a transfer to the Northern District of Texas. Accordingly, defendant Brown's motion to transfer the case to that forum is granted. Plaintiff's motion for entry of judgment against all defendants in default is held in abeyance pending transfer of the case.

---

**12.** This conclusion is consistent with the "most significant contacts" test which Illinois courts employ to determine which state's law governs a tort claim, and which this Court also applies in diversity actions. *See French v. Beatrice Foods Co.*, 854 F.2d 964, 966 (7th Cir.1988).