**SECA LEASING LIMITED PARTNERSHIP, Plaintiff,**

v.

**William BRANDT, Jr. individually, William Brandt, Jr. as Assignee For The Benefit Of Creditors Of Integrated Plastics Technology, Inc., and Development Specialists, Inc., Defendants.**

No. 92 C 1736.

United States District Court, N.D. Illinois, E.D.

Aug. 13, 1992.

## MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, District Judge.

## I. INTRODUCTION

After defendants conducted the public auction of a debtor's assets, plaintiff SECA Leasing Limited Partnership ("SECA") charged defendants with breach of contract, negligence, breach of the fiduciary duty of an escrowee, breach of the fiduciary duty of a trustee, breach of a resulting trust, conversion, and intentional misrepresentation. SECA asks for judgment against the defendants for $1,084.28, together with attorney's fees, costs, and $25,000 in punitive damages. Federal jurisdiction is premised upon 28 U.S.C. § 1334(a) and (b), and venue is purportedly appropriate in the Northern District of Illinois pursuant to 28 U.S.C. § 1409(e).

Defendants have moved, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, to dismiss plaintiff's complaint for improper venue or, in the alternative, to transfer the case pursuant to 28 U.S.C. § 1412 to the District Court for the Southern District of Indiana.

For the reasons given below, this Court finds that jurisdiction over this matter lies in the District Court for the Southern District of Indiana, to which this case is hereby ordered transferred.

## II. FACTS

For purposes of the present motion to dismiss or transfer, the Court accepts the allegations of the complaint as true. *Vanguard Financial Service Corp. v. Johnson*, 736 F.Supp. 832, 834 (N.D.Ill.1990).

At a public auction conducted by defendants in Chicago on April 3, 1991, SECA submitted the highest bid for the assets of Integrated Plastics Technology, Inc. ("IPT"), an Indiana manufacturing business. Two days prior to the auction, on April 1, 1991, three of IPT's creditors had initiated Chapter 7 involuntary bankruptcy proceedings against IPT in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division ("the Indiana Bankruptcy Court"). Defendant William Brandt ("Brandt") conducted the auction, acting as assignee for the benefit of IPT's creditors.

On the day of the auction, SECA delivered a $50,000 certified check made payable to Brandt as assignee, and wire-transferred $275,000 to him the next day as earnest money—a total of ten percent of SECA's bid of $3,250,000. SECA alleges that Brandt, in off-the-record conversations during the auction proceedings, had represented that he would deposit the earnest money in an interest-bearing account. Brandt then delegated to Scott Wood, an employee at defendant Development Specialists, Inc. ("DSI"), the responsibility for depositing the earnest money. Although defendants did proceed to deposit the earnest money, they did not place it into an interest-bearing account until April 26, 1991, and did so on that date only because SECA had discovered defendants' omission and alerted them to it.

After the April 3rd auction, the Indiana Bankruptcy Court declined to confirm the sale of IPT's assets to SECA. On April 9, 1991, IPT voluntarily converted the case to a Chapter 11 proceeding. A second auction was advertised and then conducted in the Indiana Bankruptcy Court on May 22, 1991, and Precision Plastics of Indiana, Inc. ("PPI") placed the winning bid. Brandt returned the original earnest money deposit to SECA on May 24, 1991, along with interest in the amount of $981.96. On June 27, 1991, defendants made an additional interest payment to plaintiff in the amount of $385.84.

SECA alleges that it is entitled to the additional interest which the earnest money would have earned had it been placed in an interest-bearing account from April 4 to April 26: to wit, $1,084.28.[1] On October

---

**1.** When the Court noted the relatively small amount at issue in this action, it tried to save both of the parties time and money by bringing them to a settlement conference; but the Court's efforts were to no avail. The parties' inability to settle has had the unfortunate result that they

11, 1991, plaintiff filed suit against defendants in the Municipal Department (First District) of the Circuit Court of Cook County, Illinois, claiming that jurisdiction was proper in that court since all parties reside in the Chicago area. On January 17, 1992, the state court issued an order dismissing the case without prejudice and noting that the proper forum for this matter was the Indiana Bankruptcy Court. Rather than pursue relief in that forum, however, SECA opted to file the instant suit in this District. Upon review of the record, this Court concurs in the decision of the Circuit Court of Cook County, Illinois that this matter belongs in the Indiana Bankruptcy Court.

### III. ANALYSIS

■ SECA alleges that venue in the Northern District of Illinois is proper under 28 U.S.C. § 1409(e):

> A proceeding arising under title 11 or arising in or related to a case under title 11, based on a claim arising after the commencement of such case from the operation of the business of the debtor, may be commenced against the representative of the estate in such case in the district court for the district where the State or Federal court sits in which the party commencing such proceeding may, under applicable nonbankruptcy venue provisions, have brought an action on such claim, or in the district court in which such case is pending.

Pursuant to this provision, SECA's theory of venue is that suit against Brandt and DSI as representatives of the bankruptcy estate is proper in this Court because "under applicable nonbankruptcy venue provisions" SECA could have brought an action here for, *inter alia*, breach of contract.

However, plaintiff's venue theory fails. First, Section 1409(e) applies when the claim arises "from the operation of the business of the debtor," and in the instant

action, SECA's claim arises solely from the liquidation process. The April 3rd auction was clearly conducted for the purpose of selling off substantial portions of the debtor's assets. (*See* Auction Transcript of Apr. 3, 1991 ("Tr."), at 2.)[2] Although the business was still operating, a subsequent order of the Bankruptcy Court indicates that the company remained operational solely for the purpose of maintaining the business' sale value as an ongoing concern. (*See* Indiana Bankruptcy Court's Order and Findings of Fact and Conclusions of Law Authorizing Debtor to Sell Assets to Precision Plastics of Indiana, Inc. dated Aug. 12, 1991 ("Bankruptcy Court's Order"), Findings of Fact, ¶¶ Q, T, W, X.)[3]

IPT did voluntarily convert the bankruptcy from a Chapter 7 proceeding to a Chapter 11 business reorganization. (Bankruptcy Court's Order, Findings of Fact, ¶ DD.) Even so, the confirmation order of the Bankruptcy Court indicates that the goal was still clearly to liquidate the assets of IPT. (*See id.*, ¶¶ GG, LL.)

In fact, it was vital to the bankruptcy estate's eventual liquidation that it be maintained as a going concern until it could be sold. PPI, a major bidder for IPT's assets, "was only interested in purchasing the Debtor's assets as a going concern" (Bankruptcy Court's Order, Findings of Fact, ¶ R), and its bid at the second auction was "predicated upon the sale of the Debtor's assets and business as a going concern." (*Id.*, ¶ MM.) Brandt stated at the April 3 auction that "the estate's position ha[d] been improved markedly by the operation of the business." (Tr., at 19.)

■ However, simply maintaining the value of the debtor's estate prior to its future liquidation, as the assignee did in this case, does not constitute "the operation of the business of the debtor" for purposes of Section 1409(e). Interpreting a similar phrase, "carrying on business,"

have surely spent more money in briefing the motion to transfer than the case is worth.

**2.** A copy of the auction transcript has been submitted by defendants as Exhibit B to their Motion to Dismiss or Transfer.

**3.** A copy of the Bankruptcy Court's Order has been submitted by defendants as Exhibit A to their Reply Memorandum in Support of Their Motion to Dismiss or Transfer.

found in 28 U.S.C. § 959(a), the Bankruptcy Court for the District of Idaho stated that "[m]erely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted." *In re Campbell*, 13 B.R. 974, 976 (Bankr.D.Idaho 1981).

. Second, the present claim against the defendants arises solely from their role in the liquidation process. SECA was aware that Brandt, in accepting the deposit of earnest money, was acting in his capacity as assignee for the benefit of IPT's creditors, as shown by the fact that SECA made its check out to "William J. Brandt, Assignee." (*See* Tr., at 39.)

Third, the outcome of the April 3rd auction was explicitly subject to the approval of the Indiana Bankruptcy Court. (Tr., at 4.) The assignee stated clearly before the auction began that he planned to take the highest bid made at the auction and "present it to [the Bankruptcy Court judge] at our earliest opportunity with an emergency motion to confirm this sale." (*Id.*) Indeed, Benjamin Waisbren, representing SECA, stated at the auction: "We do understand that the bankruptcy court must approve any sale today." (*Id.*, at 11.) After the first auction, Brandt remained in possession of IPT's assets pursuant to orders of the Indiana Bankruptcy Court. (Bankruptcy Court's Order, Findings of Fact, ¶ EE.) The Bankruptcy Court did *not* approve the sale of the assets to SECA, holding that the bid was "not in the best interest of the estate." (*Id.*, ¶ WW; *see also* ¶ LLL.) Thus, the event which triggered the return of the funds held in escrow was an action taken by the Bankruptcy Court, confirming a link between the instant suit and the bankruptcy proceedings. in Indiana.

Ultimately, this Court finds that the interest of justice favors the transfer of the instant action to the Indiana Bankruptcy Court. *See* 28 U.S.C. § 1412. As is clear from its detailed Order, the Indiana Bankruptcy Court is quite familiar with the April 3rd bankruptcy auction proceedings.

(*See* Bankruptcy Court's Order.) The bankruptcy had already been filed when the April 3rd auction took place, and that auction occurred under the control and jurisdiction of the Bankruptcy Court. Plaintiff and defendants knew the winning bid was to be subject to the final approval of the Bankruptcy Court, and after effectively nullifying the first auction the Bankruptcy Court did hold hearings soliciting further bids. The first auction was clearly held under the auspices of the Indiana Bankruptcy Court, which is best situated to hear all claims arising from that proceeding.

This Court is not persuaded that defendants' Motion to Dismiss or Transfer was "purely done to harass the [p]laintiff[ ] and escalate the cost of litigation," as SECA contends. (Pl.'s Mem. of Law in Resp. to Defs.' Mot. to Dismiss or Transfer, at 10.) SECA has apparently participated actively in the IPT bankruptcy proceedings in Indiana, and has a motion pending there for sanctions against IPT under Bankruptcy Rule 9011. (*See* Defs.' Mot. to Dismiss or Transfer, Ex. C.) Under these circumstances, it is not unjust to require plaintiff to be heard in Indiana on this matter.

■ Under Section 1412, of course, this Court has authority only to transfer the case to another District Court. 28 U.S.C. § 1412. *Cf. Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1212 (3d Cir.1991). Upon transfer to the Southern District of Indiana, the District Court there clearly has the discretion to determine how best to proceed with the case. If the parties so consent, the matter may be transferred to the Bankruptcy Court for final resolution pursuant to 28 U.S.C. § 157(c)(2); if they do not consent, the matter may nonetheless be referred to the Bankruptcy Court for entry of proposed findings subject to plenary review by the District Court. *See* 28 U.S.C. § 157(c)(1); *see also In re Lissner*, 115 B.R. 604, 612–13 (N.D.Ill.1990). In any event, the appropriate course of action is for the Indiana District Court to ascertain the proper forum with the input of the parties.

## IV.  CONCLUSION

For the foregoing reasons, this Court orders that this matter be transferred pursuant to 28 U.S.C. § 1412 to the United States District Court for the Southern District of Indiana, Indianapolis Division.